## LEIGHTON *vs.* SHAPLEY.

If a mortgagee of personal property, after condition broken, receive the whole money from the mortgager, that is a waiver of the forfeiture, and reinvests the title in the mortgager, without any formal delivery. And if the mortgagee afterwards detains the property without sufficient reason, he will be liable in trover.

TROVER, for a mare. The conversion was alleged to have been on the 26th September, 1834.

On the trial in the common pleas it appeared that the plaintiff, prior to the 15th of August, 1834, was the owner of the mare, and on that day mortgaged her to the defendant, with condition that the mortgage should be void on the payment of a note of $25 from the plaintiff to the defendant on or before the 15th of September. A part of the note was paid within the time. The mare remained in the possession of the plaintiff until the 25th of September, and the plaintiff having loaned her to one Tanner, the defendant took possession of her. A controversy thereupon arose between the

plaintiff and defendant, and the plaintiff offered to pay the money—to which the defendant replied, that was all he wanted. The plaintiff proposed paying it immediately, but the defendant said he had not the note with him, and could not settle then—that he had a mortgage bill of sale—considered the mare his property, and should ride her home; but if the plaintiff would come to Rochester the next day, and pay the money, he would give her up, and give up the bill of sale. The next day the plaintiff called on the defendant, who produced the note, and made out his claim against the plaintiff, putting in $5 for abuse the day before, and another claim of $5 which the plaintiff denied to be due, and some other small articles. The plaintiff objected, that this was not according to the agreement; but the defendant replied he had the staff in his own hands; considered the mare his, and would not release her until he got all the plaintiff owed him. The plaintiff then paid the defendant his whole claim—the note was given up, the mortgage discharged—and the plaintiff said he supposed he might have the mare. The defendant said yes, and the parties went to the stable where the mare was. The plaintiff asked the defendant to lead her out into the road. The defendant said it seemed he was very particular; and the plaintiff replied—I ought to be, for you have been so with me. The defendant led the mare out—said he ought to have a receipt—and then led her back into the stable and shut the door. The plaintiff then asked him for the mare, and the defendant said, by and by; I want to see Mr. Woodman first, and see if I ought not to have a receipt; and went towards his office, which was forty or fifty rods distant. After he was gone the plaintiff left, and returned home.

The court instructed the jury, that although the defendant might have held the mare after the 15th of September, under his mortgage, he might waive his right so to do; and that his agreement to receive the money and give up the mare, with the subsequent settlement and discharge of the

mortgage, was a waiver and discharge of all rights under it; and that his putting the mare in the stable afterwards, and his refusal to deliver her until he went to Woodman's, was evidence upon which they might find a conversion.

The jury returned a verdict for the plaintiff, and the defendant moved for a new trial, on account of misdirection.

*Christie,* and *Woodman,* for the defendant. This was a re-sale of the mare, and imperfect because there was no delivery.

The defendant might require a reasonable time to ascertain whether he was not entitled to a receipt. The detention, therefore, was not evidence of a conversion. 1 *Moore & Scott* 459, *Hayward* vs. *Seaward;* 3 *Stark. Ev.* 1498; 5 *B. & Ald.* 247, *Alexander* vs. *Southey.*

*N. Eastman,* for the plaintiff.

PARKER, J. Prior to the statute of July 4, 1834, upon the non-performance of the condition in a mortgage of goods and chattels, the property became absolute in the mortgagee, no provision having been made for any equity of redemption. 8 *John. Rep.* 96, (2 *Ed.* 75) *Brown* vs. *Bement;* 7 *Cowen* 290, *Ackley* vs. *Finch;* 9 *Wend. Rep.* 80, *Langdon* vs. *Buel;* 12 *Wend.* 61, *Patchin* vs. *Pierce.*

That statute confers on this court chancery powers in all cases respecting the redemption and foreclosure of mortgages; and one of the powers exercised by a court of chancery is to decree a redemption of personal chattels, after the same have become forfeited, (12 *Wend.* 61) unless the mortgagee has foreclosed the equity by a sale, upon reasonable notice to the mortgager. *Ibid;* 2 *John. Ch. Rep.* 100, *Hart* vs. *Ten Eyck.*

There can be no doubt, however, that before, as well as since that statute, the mortgagee might waive a forfeiture,

and receive his money, if the mortgager offered it after the day ; and a receipt of the money, in such case, must be considered as a waiver, and reïnvests the title of the goods in the mortgager.  12 *Wend.* 61 ; 2 *Pick.* 210, *Parks* vs. *Hall ;* 6 *N. H. Rep.* 12, *Batchelder* vs. *Robinson ;* 4 *Green.* 495, *Quint* vs. *Little.*

It is only upon the ground of waiver that the mortgagee could be entitled to take the whole money, unless the parties negotiated for a new purchase, which was not the fact in this case.   Both parties here treated it as a redemption, (although the defendant made use of his right to hold the mare, to obtain further sums from the plaintiff than those mentioned in the mortgage.)   This is evident from the fact that the mortgage was discharged.

No delivery, therefore, was necessary to perfect the plaintiff's title ; and the defendant is liable in this action, having shut the mare in the stable and detained her, unless his excuse was a reasonable one, and he entitled to delay to ascertain his rights.

The excuse he made for withholding her was to ascertain whether he was not entitled to a receipt.   But this, it is evident from the case, was a mere pretence to delay the plaintiff.   If a receipt for the mare was intended, the plaintiff had not refused to give one, nor had the defendant asked for it.   There was of course no ground for delay to enquire if he was entitled to demand one.   And we are not aware of any authority which would have entitled him to require one.   The detention was evidently dictated by other motives, was without sufficient reason, and under the circumstances must be held to be sufficient evidence of a conversion.

*Judgment for the plaintiff.*